# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**AMAR SHAKTI ENTERPRISES, LLC;
ORLANDO LODGING ASSOCIATES,
LLP; SHAKTI INVESTMENT INC.;
KATHERINE I. MILLER; VISHNU, INC.;
RAMANLAL K. PATEL; RAM-LAKHAN,
INC.; NATU PATEL; SHIVA
INVESTMENTS, LLC; MHB, LLC;
CABOT HOSPITALITY, LLC;  BAL
KISHAN, INC.; TESHARA
INVESTMENTS, LLC; and LARRY J.
MILLER,**

          **Plaintiffs,**

-vs-                                                                                     Case No.  6:10-cv-1857-Orl-31KRS

**WYNDHAM WORLDWIDE, INC.; SUPER
8 WORLDWIDE, INC. f/k/a Super 8 Motels,
Inc.; DAYS INNS OF AMERICA, II, INC.
f/k/a Days Inns of America, Inc.; DAYS
INNS WORLDWIDE, INC.; AMERIHOST
FRANCHISE SYSTEMS, INC.; RAMADA
WORLDWIDE, INC.,**

          **Defendants.**

## ORDER

    This case comes before the Court on the Motion to Dismiss and Motion to Compel

Arbitration (Doc. 42) filed by the Defendants, the response (Doc. 57) filed by the Plaintiffs, and

the Defendants' Reply.  (Doc. 62).

**I. Background**[1]

The Defendants are a group of hotel franchisors, including Wyndham Worldwide, Inc. ("Wyndham") and five of its wholly owned subsidiaries. The Plaintiffs in this putative class action are a group of fourteen hotel franchisees. The instant dispute involves a customer loyalty program known as "Wyndham Rewards."[2] Individuals enrolled in the program who make paid visits to Wyndham brand hotels earn points redeemable for free stays and other benefits. Wyndham charges franchisees a fee of up to five percent on room sales to Wyndham Rewards members.

The Plaintiffs complain that, in some aspects, Wyndham Rewards is simply a way for the Defendants to impose additional fees on their franchisees rather than a way to build loyalty. They contend that at least some of the Rewards members do not even know that they are in a loyalty program. The Plaintiffs assert that all guests booking stays online at Wyndham hotels are automatically enrolled in Wyndham Rewards. In addition, Wyndham Rewards members, including those who were automatically enrolled, receive credit for their stays (and Wyndham receives the five percent fee) even if the guests never identify themselves to the franchisees as Rewards members.[3] In their complaint (Doc. 1), the Plaintiffs assert claims for breach of contract (Count I and II), unjust enrichment (Count III), and violations of the Florida Deceptive and Unfair

---

[1] For purposes of this motion, this Court accepts as true all facts alleged in the complaint (Doc. 1). *See Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007).

[2] The program was previously known as "TripRewards."

[3] The process by which these guests are identified as Rewards members is known as "proactive matching."

Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201 *et seq*. (Count IV). By way of the instant motion, the Defendants move to dismiss the claims brought by four plaintiffs on the grounds that they agreed to mandatory arbitration. The Defendants seek dismissal of all remaining claims pursuant to Rule 12(b)(6).

## II. Standards

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief," so as to give the defendant fair notice of what the claim is and the grounds upon which it rests, *Conley v. Gibson*, 35 U.S. 41, 47 (1957), *overruled on other grounds*, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). A Rule 12(b)(6) motion to dismiss for failure to state a claim merely tests the sufficiency of the complaint; it does not decide the merits of the case. *Milbum v. United States*, 734 F.2d 762, 765 (11th Cir.1984). In ruling on a motion to dismiss, the Court must accept the factual allegations as true and construe the complaint in the light most favorable to the plaintiff. *SEC v. ESM Group, Inc.*, 835 F.2d 270, 272 (11th Cir.1988). The Court must also limit its consideration to the pleadings and any exhibits attached thereto. FED. R. CIV. P. 10(c); *see also GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993).

The plaintiff must provide enough factual allegations to raise a right to relief above the speculative level, *Twombly*, 550 U.S. at 555, and to indicate the presence of the required elements, *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1302 (11th Cir.2007). Conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal. *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

**III. Analysis**

    **A. Plaintiffs with arbitration clauses in their franchise agreements**

The franchise agreements of Plaintiffs Larry Miller, Katherine Miller, and Ramanlal Patel contain identical arbitration provisions, providing that "any controversy or claim relating to this agreement ... shall be submitted to arbitration" and that "[t]he obligation to arbitrate shall be binding upon both parties." The franchise agreement of Plaintiff Vishnu, Inc. has similarly broad arbitration language, providing that the parties "will submit any controversy or claim relating to the offer, sale, negotiation, performance, interpretation, enforcement, termination, and validity of this Agreement ... to binding arbitration," including claims "arising under ... state law or regulation."

Arbitration clauses are to be construed generously, with all doubts resolved in favor of arbitration. *Seaboard Coast Line R. Co. v. Trailer Train Co.*, 690 F.2d 1343, 1348 (11th Cir. 1982). Absent a violation of public policy, a federal court must refer all controversies covered by such a clause to arbitration. *Telecom Italia, SpA v. Wholesale Telecom Corp.*, 248 F.3d 1109, 1114 (11th Cir. 2001).

The claims asserted in this case clearly fall within the broad category of claims covered by these arbitration agreements. However, the Plaintiffs argue that, instead of dismissing their claims and referring them to arbitration, the Court should allow them to amend the complaint to add an additional subclass, consisting of franchisees with arbitration clauses. In support of their argument that amendment rather than dismissal is the appropriate resolution, the Plaintiffs cite *Rosen v. J.M. Auto Inc.*, 270 F.R.D. 675, 679 (S.D. Fla. 2009), in which the court created a subclass for plaintiffs whose contracts contained arbitration provisions. However, the only issue addressed in *Rosen* was

class certification, as no motion to compel arbitration was before the court. *Id.* at 679. Contrary to the Plaintiffs' argument, the case does not suggest that creation of a subclass immunizes the members of that subclass from their agreement to arbitrate.

Plaintiffs do not argue enforcing this arbitration provision would offend public policy, or offer any other reason why arbitration would be inappropriate. Accordingly, the Court is obligated to enforce the arbitration clauses in regard to these plaintiffs.

### B. Unjust Enrichment

Wyndham argues that the Plaintiffs' claims for unjust enrichment are foreclosed as a matter of law because a contract exists between the parties. Unjust enrichment is a claim in equity and does not exist when other adequate legal remedy exists for the parties. *Webster v. Royal Caribbean Cruises, Ltd.*, 124 F.Supp. 2d 1317, 1326-27 (S.D. Fla. 2000). Plaintiffs argue that they are asserting this claim in the alternative to their breach of contract claim. However, a plaintiff cannot plead a claim for unjust enrichment in the alternative to a breach of contract claim unless he or she disputes the existence of the contract. *Zarrella v. Pacific Life Ins. Co.*, 755 F.Supp 2d 1218, 1227 (S.D. Fla. 2010). None of these Plaintiffs dispute the existence of their respective franchise agreements. Count III must be dismissed with prejudice.

### C. FDUTPA

Wyndham contends that most of the FDUTPA claims asserted in Count IV must be dismissed because they lack a sufficient connection to the state of Florida. Amar Shakti Enterprises, LLC (henceforth, "Shakti Enterprises") is the only plaintiff in this matter that is either a Florida corporation or that has its primary place of business in Florida. (The claim of Shakti Enterprises is discussed below.) Wyndham maintains its principal place of business in New Jersey

and administers the Rewards program from there.  The other defendants are either Delaware or South Dakota corporations, and none have a principal place of business in Florida.

Various courts have recognized Constitutional or other limitations on the application of FDUTPA to non-Florida residents, or to conduct occurring in other states.  *See Montgomery v. New Piper Aircraft, Inc.*, 209 F.R.D. 221, 228-229 (S.D. Fla. 2002) (holding the Due Process Clause and Commerce Clause prohibit the nationwide application of FDUTPA in class action suits).  Florida state courts have also prevented nonresidents from bringing FDUTPA claims where the allegedly unfair or deceptive conduct did not occur within state borders.  *See Coastal Physician Servs. Of Broward Cnty., Inc. v. Ortiz*, 764 So.2d 7, 8 (Fla. 4th DCA 1999) (holding non-Florida residents cannot assert FDUTPA claims); *Millennium Commc'ns & Fulfillment, Inc. v. Office of the Attorney Gen.*, 761 So.2d 1256, 1262 (Fla 3d DCA 2000) (holding FDUTPA is available to nonresidents when the conduct at issue occurs entirely within Florida); *Océ Printing Sys. USA, Inc. v. Mailers DataServs., Inc.*, 760 So.2d 1037, 1042 (Fla. 2d DCA 2000) (holding only residents can assert a claim under FDUTPA).

Stated simply, for the most part Count IV involves nonresident plaintiffs suing nonresident defendants for actions occurring outside of Florida. The nonresident plaintiffs cannot assert an FDUTPA claim on the basis of conduct unconnected to this state.  As to these plaintiffs, Count IV must be dismissed with prejudice.

The sole Florida resident, Shakti Enterprises, does have the ability to assert an FDUTPA claim in regard to activities occurring in this state.  However, under FDUTPA, a cause of action cannot exist for behavior that complies with the terms of a contract. *Zlotnick v. Premier Sales Group, Inc.*, 431 F.Supp. 2d 1290, 1295 (S.D. Fla. 2006) (holding FDUTPA claim not available

because the alleged unfair practice was permitted by the terms of a reservation agreement), *aff'd,* 480 F.3d 1281 (11th Cir. 2007). Shakti Enterprises' franchise agreement, which is attached to the Complaint, requires that Shakti Enterprises participate in marketing programs (Doc 1-1 at 3), allows the franchisor to impose a "Mandatory Marketing Program Charge" of "up to 5% of Gross Room Revenues accruing from each qualifying stay" and notes that the franchisor "will proactively match and award members with points or other program currency they earn on qualified stays even if they do not present their ... membership card upon check-in" (Doc. 1-1 at 38). In addition, Shakti Enterprises admits that its franchise agreement provides for both its participation in the Rewards program and proactive matching.[4] (Doc. 1 at 15). Because of this, Shakti Enterprises cannot allege that the requirement that it participate in the Rewards program or the Defendants' practice of proactive matching are unfair practices under FDUTPA.

Shakti Enterprises also alleges as a basis for its FDUTPA claim that it was induced into entering the franchise agreement by Wyndham's misrepresentations as to what charges it would be expected to pay. (Doc. 1 at 31). However, its franchise agreement contains a merger clause (Doc. 1-1 at 20), foreclosing this line of argument.

Finally, Shakti Enterprises also complains that the Defendants have enrolled individuals into the Rewards programs without those individuals' knowledge, which has the ultimate effect of improperly inflating the amount of money the Defendants can charge the franchisees. This

---

[4]The Court also notes that Shakti Enterprises has not asserted that either its forced participation in the Rewards program or the Defendants' practice of proactive matching constitutes a breach of its franchise agreement.

automatic enrollment is not covered by the franchise agreement. Accordingly, Shakti Enterprises may continue to assert that this practice violates FDUTPA.

### D. Count I – Breach of Contract

In Count I, Plaintiffs Shakti Investment, Inc. (henceforth, "Shakti Investment") and Ram-Lakhan, Inc. (henceforth, "Ram-Lakhan") assert a claim for breach of contract.[5] They contend that their franchise agreements do not permit the Defendants to practice proactive matching. They further contend that by using proactive matching to uncover additional Rewards members staying at their hotels, and then imposing the five percent room fee in regard to these additional Rewards members, the Defendants have imposed fees beyond those contemplated by the franchise agreement, thereby breaching it.

The Defendants argue that neither the five percent fee nor proactive matching violates the franchise agreements. However, the contractual language they seek to rely on is far from clear-cut. Wyndham notes that Shakti Investment agreed to "participate in the VIP Card program and other proprietary frequent guest programs we may require from time to time." (Doc. 1-2 at 5). In addition, Ram-Lakhan agreed that Wyndham had the authority to "increase or modify the Reservation System User Fees for all System Facilities, and to add other fees and charges for new services." (Doc. 1-7 at 6).

By their terms, the franchise agreements at issue in this count are to be construed in accordance with New Jersey law. (Doc. 1-2 at 20; Doc. 1-7 at 22). Under New Jersey law, "[w]here a contract is ambiguous, courts will consider the parties' practical construction of the

---

[5]Plaintiffs Larry Miller, Katherine Miller, Ramanlal Patel, and Vishnu, Inc. originally joined in this count, but as detailed *supra*, those Plaintiffs' claims have been referred to arbitration.

contract as evidence of their intention and as controlling weight in determining a contract's interpretation; where the terms of a contract are clear, however, the court must enforce it as written." *County of Morris v. Fauver*, 707 A.2d 958, 969 (N.J. 1998). At best, the provisions cited by the Defendants are ambiguous. Standing alone, they do not establish, as a matter of law, that these plaintiffs agreed to participate in the current Rewards program (including the methods used to implement it, such as proactive matching). At this stage of the proceedings, the Court cannot consider other evidence, such as the parties' practical construction of these contracts, to interpret them. Further, the Plaintiffs assert that these franchise agreements were drafted by the Defendants, an assertion the Defendants do not deny. Under New Jersey law, a contract must be strictly construed against the drafter where ambiguity leads to two reasonable alternative interpretations. *Driscoll Const. Co., v. State, Dep't of Transp.*, 853 A.2d 270, 279 (N.J. Super. Ct. App. Div. 2004). Accordingly, the motion to dismiss this count will be denied as to the remaining plaintiffs.

### E. Count II – Breach of Contract

In Count II, Plaintiffs Orlando Lodging Associates, LLP, Natu Patel, and Shiva Investments, Inc. also assert a claim for breach of contract. The franchise agreements for the plaintiffs who are asserting this claim explicitly authorize the collection of the five percent Wyndham Rewards fee. However, those franchise agreements are silent on the topic of proactive matching. Just as with Count I, this group of plaintiffs contend that the Defendants' practice of proactive matching constitutes a breach of their agreements, in that the fees for proactively matched members are imposed "irrespective of whether the customer has elected to stay at a Wyndham branded property because of his or her status as a Wyndham Rewards member or

sought to become a Wyndham Rewards member, all in violation of the language of the franchise agreements." (Doc. 1 at 27).[6] However, these plaintiffs fail to point to any language that has been breached by these actions. And the Court's review has not uncovered any. For example, the agreements do not include any language limiting the imposition of the five percent fee to situations in which the guest "has elected to stay at a Wyndham branded property because of his or her status as a Wyndham Rewards member." Accordingly, the motion to dismiss will be granted as to Count II. However, it does not appear that the contract claims of this group of plaintiffs are foreclosed as a matter of law. Accordingly, the dismissal will be without prejudice.

**IV. Conclusion**

For the reasons state above, it is hereby **ORDERED** that the Motion to Dismiss and Motion to Compel Arbitration (Doc. 42) is **GRANTED IN PART** and **DENIED IN PART**. The claims asserted by Plaintiffs Katherine Miller, Larry Miller, Vishnu, Inc., and Ramanlal K. Patel are **STAYED** and the parties are ordered in engage in arbitration. The motion to dismiss Count I is **DENIED** as to Plaintiffs Shakti Investment, Inc. and Ram-Lakhan, Inc. Count II is **DISMISSED WITHOUT PREJUDICE**. Count III is **DISMISSED WITH PREJUDICE.** Count IV is **DISMISSED WITH PREJUDICE**, with the exception of the claim of Shakti Enterprises, Inc.

---

[6]In their response, the plaintiffs also complain that the automatic enrollment of guests into the Rewards program constitutes a breach, but that allegation does not appear in Count II.

that the Defendants' practice of automatic enrollment into the Wyndham Rewards program violates FDUTPA, which may continue**.** In all other regards, the Motion is **DENIED.**

**DONE** and **ORDERED** in Chambers, Orlando, Florida on August 19, 2011.

_____
GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party