# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

AMAR SHAKTI ENTERPRISES, LLC, a Florida corporation, ORLANDO LODGING ASSOCIATES, LLP, an Indiana limited liability company, SHAKTI INVESTMENT, INC., an Arizona corporation, RAM-LAKHAN, INC., a North Carolina corporation, NATU PATEL, an individual, SHIVA INVESTMENTS, LLC, an Arkansas limited liability company, MHB, LLC, a North Carolina limited liability company, CABOT HOSPITALITY, LLC, an Arkansas Limited liability company, BAL KISHAN, INC., a North Carolina corporation, TESHARA INVESTMENTS, LLC, an Arizona limited liability company, and all others similarly situated,

        Plaintiffs,

v.

WYNDHAM WORLDWIDE, INC., a Delaware corporation, SUPER 8 WORLDWIDE, INC. f/k/a SUPER 8 MOTELS, INC., a South Dakota corporation, DAYS INNS OF AMERICA, II, INC. f/k/a DAYS INNS OF AMERICA, INC., a Delaware corporation, DAYS INNS WORLDWIDE, INC., a Delaware Corporation, AMERIHOST FRANCHISE SYSTEMS, INC., a Delaware corporation, RAMADA WORLDWIDE, INC. f/k/a RAMADA FRANCHISE SYSTEMS, INC., a Delaware corporation,

        Defendants.

Case No.: 6:10cv-1857-Orl-31KRS

<u>DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT AND INCORPORATED MEMORANDUM IN SUPPORT</u>

<strong>TABLE OF CONTENTS</strong>

<strong>Page</strong>

INTRODUCTION ........................................................................................................................1

BACKGROUND AND PROCEDURAL HISTORY...................................................................2

LEGAL STANDARDS ON A MOTION TO DISMISS.................................................................4

ARGUMENT .............................................................................................................................4

I.      COUNT IV MUST BE DISMISSED BECAUSE THE NEW JERSEY
         CONSUMER FRAUD ACT DOES NOT APPLY UNDER THE FACTS
         ALLEGED ........................................................................................................................4

         A.      Under The NJCFA, Plaintiff Franchisees Are Not "Consumers" Nor
                  Are Their Franchises "Merchandise".......................................................................5

         B.      The Economic Loss Doctrine Bars Plaintiffs' Claims Under The
                  NJCFA ....................................................................................................................8

II.     ORLANDO LODGING ASSOCIATES' COUNT III FDUTPA CLAIM
         SHOULD BE DISMISSED BECAUSE THIS COURT ALREADY
         DISMISSED ITS FDUTPA CLAIM WITH PREJUDICE ..............................................11

III.    COUNT II MUST BE DISMISSED BECAUSE THE CONDUCT ALLEGED
         IS NOT A BREACH OF CONTRACT AS A MATTER OF LAW .................................12

         A.      Subclass III's Breach-of-Contract Claim Must Be Dismissed Because
                  These Plaintiffs Have Failed To Address The Deficiencies In This
                  Court's Prior Order Dismissing This Claim ...........................................................12

         B.      Subclass IV's Breach-Of-Contract Claim Fails Under The Logic Of
                   This Court's Prior Order .......................................................................................17

IV.    COUNT I SHOULD BE DISMISSED TO THE EXTENT PLAINTIFFS
         ALLEGE A BREACH OF THE IMPLIED DUTY OF GOOD FAITH AND
         FAIR DEALING...............................................................................................................18

CONCLUSION.............................................................................................................................19

i

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Amur Realty, LLC v. Banco Do Brasil, S.A.*,
    2011 WL 1327422 (D.N.J. Apr. 5, 2011) ............................................................ 15, 18

*Arc Networks, Inc. v. Gold Phone Card Co., Inc.*,
    756 A.2d 636 (N.J. Super. Ct. 2000) ............................................................ 5

*Ashcroft v. Iqbal*,
    129 S. Ct. 1937 (2009) ............................................................ 4

*BOC Group, Inc. v. Lummus Crest, Inc.*,
    597 A.2d 1109 (N.J. Super. Ct. 1990) ............................................................ 5

*Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co.*,
    226 F. Supp. 2d 557 (D.N.J. 2002) ............................................................ 9

*Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs.*,
    864 A.2d 387 (N.J. 2005) ............................................................ 16, 18

*Campmor, Inc. v. Brulant, LLC*,
    2010 WL 1381000 (D.N.J. Apr. 1, 2010) ............................................................ 11

*Chen v. HD Dimenson Corp.*,
    2010 WL 4721514 (D.N.J. Nov. 15, 2010) ............................................................ 10

*Christy v. We The People Forms & Serv. Centers, USA, Inc.*,
    213 F.R.D. 235 (D.N.J. 2003) ............................................................ 6, 7

*Coastal Physician Servs. of Broward Cnty., Inc. v. Ortiz*,
    764 So. 2d 7 (Fla. 4th DCA 1999) ............................................................ 12

*Coldwell Banker Real Estate, LLC v. Plummer & Assocs.*,
    2009 WL 3230840 (D.N.J. Oct. 2, 2009) ............................................................ 16, 18

*Dutton Road Assocs. LP v. Sunray Solar, Inc.*,
    2011 WL 1375681 (D.N.J. April 12, 2011) ............................................................ 11

*Farash & Robbins, Inc. v. Fleet Nat. Bank*,
    2005 WL 3465659 (D.N.J. Dec. 19, 2005) ............................................................ 9, 10

*Gaelick v. Connecticut Gen. Life Ins. Co.*,
    2011 WL 3794228 (D.N.J. Aug. 25, 2011) ............................................................ 16

*Hailey v. City of Camden*,
    650 F. Supp. 2d 349 (D.N.J. 2009) ............................................................ 19

*Horizon Group of New England, Inc. v. New Jersey Schls. Const. Corp.*,
    2011 WL 3687451 (N.J. Super. Ct. App. Div. Aug. 24, 2011) ................................... 9

*J&R Ice Cream Corp. v. California Smoothie Licensing Corp.*,
    31 F.3d 1259 (3d Cir. 1994) ............................................................... 6, 7

*Kavky v. Herbalife Int'l of Am.*,
    820 A.2d 677 (N.J. Super. Ct. App. Div. 2003) ................................................ 6, 7

*Luso Fuel Inc. v. BP Prods. N. Am., Inc.*,
    2009 WL 1873583 (D.N.J. June 29, 2009) ..................................................... 15

*Maintainco, Inc. v. Mitsubishi Caterpillar Forklift Am., Inc.*,
    2006 WL 1982735 (N.J. Super. Ct. June 5, 2006) .............................................. 7

*Océ Printing Sys. USA, Inc. v. Mailers DataServs., Inc.*,
    760 So. 2d 1037 (Fla. 2d DCA 2000) ......................................................... 12

*SEC v. ESM Group, Inc.*,
    835 F.2d 270 (11th Cir. 1988) .............................................................. 4

*Shinn v. Champion Mortg. Co., Inc.*,
    2010 WL 500410 (D.N.J. Feb. 5, 2010) ...................................................... 10

*State Capital Title & Abstract Co. v. Pappas Business Servs., LLC*,
    646 F. Supp. 2d 668 (D.N.J. 2009) .......................................................... 9

*Traverso v. Home Depot, U.S.A., Inc.*,
    2007 WL 3124698 (D.N.J. Oct. 23, 2007) .................................................... 10

*Wade v. Kessler Inst.*,
    798 A.2d 1251 (N.J. 2002) .................................................................. 15

*Williams v. J.P. Morgan Chase Bank, N.A.*,
    2009 WL 5128030 (M.D. Fla. Dec. 21, 2009) ................................................. 17

**Statutes**

Fla. Stat. § 501.201 ........................................................................ 1, 3

N.J. Stat. Ann. § 56:8 (2011) ............................................................. 1, 4, 5

Pursuant to Rule 12(b)(6), defendants move to dismiss in large part plaintiffs' second amended complaint.

## INTRODUCTION

After finding legal deficiencies in plaintiffs' various theories of liability, this Court considerably narrowed the claims in this sprawling putative nationwide class action when it granted Wyndham's motion to dismiss in substantial part. Undeterred, plaintiffs have switched counsel and filed an eleventh-hour second amended complaint purporting to address some of the defects this Court identified and raising some entirely new claims. Taking the counts in reverse order, these claims should be dismissed either in whole or in part:

- Count IV, alleging a violation of the New Jersey Consumer Fraud Act (NJCFA), N.J. Stat. Ann. § 56:8-1 *et seq.* (2011), must be dismissed, because under the Act and the well-established case law interpreting it, these hotel franchisees are not "consumers" and their franchises are not "merchandise." Count IV should also be dismissed because New Jersey's economic loss doctrine bars plaintiffs from seeking relief under the NJCFA where, as here, their claims arise from the alleged failure to perform on a contract.

- Count III, alleging a violation of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), Fla. Stat. § 501.201 *et seq.* (2011), must be dismissed as to plaintiff Orlando Lodging Associates, because this Court already dismissed Orlando Lodging's FDUTPA claim with prejudice since it is not a Florida resident.

- Count II must be dismissed as to Subclass III because this Court previously dismissed this breach-of-contract claim and plaintiffs cannot cure the deficiency that the Court identified. That is equally true with respect to Subclass IV, the other group now bringing

this claim, as their contracts expressly allow both the Rewards Fee and proactive matching.

- Count I, a breach-of-contract claim brought by two subclasses, should be dismissed to the extent plaintiffs now try to allege the breach of an implied duty of good faith and fair dealing, because there is no suggestion of bad faith and because this allegation is duplicative and would lead to impermissible double recovery.

For the reasons set forth above and that follow, this Court should reject plaintiffs' attempt to expand this case so late in the day and thereby undermine the Court's prior dismissal order.

## BACKGROUND AND PROCEDURAL HISTORY

This case is a putative class action brought by hotel franchisees operating under the Wyndham family of lodging brands.[1] 10/19/11 2d Am. Compl. ¶ 1. Plaintiffs' allegations center on Wyndham Rewards, Wyndham's customer loyalty program. *Id.* ¶ 83. Under Wyndham Rewards (formerly known as Trip Rewards), guests earn points that can be redeemed for various benefits. To maintain the Rewards program, Wyndham charges its franchisees a fee based upon a percentage of room revenues generated when a Rewards member stays at a Wyndham-brand hotel at a qualifying rate. *Id.* ¶ 72. Plaintiffs challenge the legality of this fee. *Id.* ¶ 129. Plaintiffs additionally challenge procedures by which guests were enrolled in the Rewards program, *id.* at ¶ 86, as well as Wyndham's practice of "Proactive Matching," whereby members receive credit for hotel stays without affirmatively presenting "a membership card," but instead by "reservation software [that] automatically looks for a member," *id.* ¶¶ 90, 92.

---

[1] "Wyndham" refers to Wyndham Hotel Group, LLC and all of the wholly-owned subsidiaries of Wyndham Hotel Group responsible for managing and operating each hotel brand, including the defendants in this case.

The original complaint in this case was brought by fourteen plaintiffs who purported to represent four subclasses and asserted four separate claims for relief. *See* 12/10/10 Compl. [Dkt. #1]. On August 22, 2011, however, this Court granted substantial portions of Wyndham's motion to dismiss that complaint, dismissing three of plaintiffs' four claims in large part and granting Wyndham's motion to compel arbitration for certain plaintiffs. *See* 8/22/11 Order [Dkt. #64]. As relevant here, the Court rejected the Count II breach-of-contract claim because the plaintiffs bringing that claim (denominated Subclass III) had contracts with Wyndham that "explicitly authorize[d] the collection of the five percent Wyndham Rewards fee." *Id.* at 9. As the Court explained, these plaintiffs had "fail[ed] to point to any language that has been breached" by proactive matching, "[a]nd the Court's review ha[d] not uncovered any." *Id.* at 10. The Court also dismissed plaintiffs' claim under the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), Fla. Stat. § 501.201 *et seq.* (2011), with the exception of plaintiff Amar Shakti Enterprises—the sole Florida resident—who the Court allowed to proceed with a FDUTPA claim limited to the issue of "automatic enrollment" in Wyndham Rewards. 8/22/11 Order at 5-8. The effect of the Court's ruling was to narrow this case to three plaintiffs and two claims: a Count I breach-of-contract claim brought by Shakti Investments, Inc. and Ram-Lakhan, Inc., and a FDUTPA claim (limited to the issue of automatic enrollment) brought by Amar Shakti Enterprises.

On the last day for moving to amend the complaint and well into the class discovery period, plaintiffs (having switched counsel) filed a motion for leave to file a second amended complaint. *See* 10/13/11 Mot. [Dkt. #79]. This Court found that "it is awfully late in the day to be advancing new theories of liability," but "with reluctance" granted plaintiffs leave to amend.

10/14/11 Order [Dkt. #80]. The Court instructed that defendants should file a motion to dismiss by October 31, 2011, *see id.*, and so this motion follows.[2]

## LEGAL STANDARDS ON A MOTION TO DISMISS

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain factual allegations which state a plausible claim for relief. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Although well-pleaded facts must be accepted as true, a complaint must be dismissed where plaintiffs fail to state a claim upon which relief can be granted. *See, e.g.*, *SEC v. ESM Group, Inc.*, 835 F.2d 270, 272, 274 (11th Cir. 1988).

## ARGUMENT

Plaintiffs' proposed amendments fail as a matter of law, in many instances under the reasoning of this Court's prior order granting Wyndham's motion to dismiss in substantial part. In fact, one of plaintiffs' amendments does nothing more than re-assert a claim that this Court already dismissed with prejudice. Plaintiffs cannot seek to expand this case so deep into this litigation, particularly when many of their claims are legally insufficient.

## I. COUNT IV MUST BE DISMISSED BECAUSE THE NEW JERSEY CONSUMER FRAUD ACT DOES NOT APPLY UNDER THE FACTS ALLEGED

In Count IV of their second amended complaint, plaintiffs (for the first time in this nearly year-old litigation) assert a claim under the New Jersey Consumer Fraud Act (NJCFA), N.J. Stat. Ann. § 56:8-1 *et seq.* (2011). *See* 2d Am. Compl. ¶¶ 184-188. But that claim must be dismissed for two basic reasons: (1) plaintiff franchisees are not "consumers" nor are their franchises

---

[2] Wyndham has already on two occasions filed answers to the claims that this Court initially allowed to proceed, and which Wyndham is not moving to dismiss here. *See* 9/6/11 Answer [Dkt. #67]; 11/7/11 Answer to First Am. Compl. [Dkt. #76]. Wyndham will file an answer to the surviving claims in plaintiffs' second amended complaint upon resolution of the instant motion.

"merchandise" within the meaning of the NJCFA; and (2) where, as here, plaintiffs' claims arise from the performance of their contractual relationship with Wyndham, New Jersey's economic loss doctrine bars their claim under the NJCFA.

### A. Under The NJCFA, Plaintiff Franchisees Are Not "Consumers" Nor Are Their Franchises "Merchandise"

The NJCFA prohibits unconscionable and deceptive practices "in connection with sale or advertisement of any merchandise," N.J. Stat. Ann. § 56:8-2, but "is not intended to cover every transaction that occurs in the marketplace," *Arc Networks, Inc. v. Gold Phone Card Co., Inc.*, 756 A.2d 636, 638 (N.J. Super. Ct. 2000). Courts have thus made clear that the NJCFA contains two important limitations that are dispositive here. First, the Act is "limited to consumer transactions" and applies only to "products and services sold to consumers in the popular sense." *Id.* (quotations omitted). And second, the NJCFA is limited to the sale of "merchandise," which the Act defines as "objects, wares, goods, commodities, services or anything offered … to the public for sale." N.J. Stat. Ann. § 56:8-1(c); *see, e.g.*, *BOC Group, Inc. v. Lummus Crest, Inc.*, 597 A.2d 1109, 1112-13 (N.J. Super. Ct. 1990) (dismissing NJCFA claim). Because plaintiff franchisees are not "consumers" and their franchises are not "merchandise," plaintiffs' NJCFA claim fails as a matter of law.

This is not the first time that franchisees have attempted to sue franchisors under the NJCFA. But such claims have been rejected. Indeed, courts applying New Jersey law have specifically recognized that the NJCFA's limited application to "consumers" and "merchandise" means that franchisees like the ones here cannot bring NJCFA claims against their franchisors. For many years, courts—including the Third Circuit—refused to construe the NJCFA to include any franchises *at all*, reasoning that a franchise is not "merchandise" and that the "ordinary

meaning of the consumer in the marketplace does not include a purchaser of a franchise." *J&R Ice Cream Corp. v. California Smoothie Licensing Corp.*, 31 F.3d 1259, 1273 (3d Cir. 1994) (holding that NJCFA did not apply to restaurant franchise). Franchises, courts explained, are "businesses … purchased for the present value of the cash flows they are expected to produce," not "consumer goods or services … purchased for consumption." *J&R Ice Cream*, 31 F.3d at 1274; *see also Christy v. We The People Forms & Serv. Centers, USA, Inc.*, 213 F.R.D. 235, 240 (D.N.J. 2003) (granting motion for judgment on the pleadings because the NJCFA "does not apply to the sale of a franchise").

More recent decisions have clarified that, although the NJCFA does not cover traditional business franchises like the ones here, the Act does reach a limited set of nominal "franchises" that much more closely resemble consumer sales because they are "offered for sale to the general public as any other merchandise is." *Kavky v. Herbalife Int'l of Am.*, 820 A.2d 677, 682 (N.J. Super. Ct. App. Div. 2003) (quotations omitted). Thus the Court in *Kavky* determined that the NJCFA could apply to a defendant who offered over the Internet to make anyone a "distributor" of herbal products for $85 and to provide customer leads for $8.50 apiece. *Id.* at 679. But the *Kavky* Court clearly outlined the limitations of its holding: in order to be subject to the NJCFA, franchises, like a consumer good, must be "available to the public at large and sold in large quantities or mass produced," and acquisition of the franchise must require "no special qualifications or experience" other than "having sufficient funds for the down payment." *Id.* at 681-82 (quotations omitted). The NJCFA, in other words, could cover those franchises that involve "pyramid sales schemes[] and similar mass public frauds." *Id.* at 679. But the *Kavky* Court made clear that it did not "disagree with the result reached in *J&R [Ice Cream]*, because

[*J&R*] appears to have involved a substantial and complex commercial transaction," *id.* at 679, unlike herbal remedies distributorships that anyone could purchase on the Internet for $85.

Taken together, *J&R Ice Cream* and *Kavky* set forth the basic rule that the traditional business franchise is outside the NJCFA because it is not "available to the public at large" and typically involves a "substantial and complex commercial transaction, unsuggestive of consumer merchandise." *Maintainco, Inc. v. Mitsubishi Caterpillar Forklift Am., Inc.*, 2006 WL 1982735, *7 (N.J. Super. Ct. June 5, 2006). Courts have thus rejected application of the NJCFA to a variety of franchise relationships involving substantial business concerns. *See, e.g.*, *J&R Ice Cream*, 31 F.3d at 1275 (directing judgment for restaurant franchisor on NJCFA claim); *We The People*, 213 F.R.D. at 240 (granting judgment on the pleadings on NJCFA claim in favor of franchisor offering document preparation services); *Maintainco*, 2006 WL 1982735, at *8 (granting judgment on NJCFA claim for franchisor of heavy machinery franchises).

Here, it is clear that plaintiffs' hotel franchises are far closer to the restaurant franchise at issue in *J&R Ice Cream* than the Internet-available, $85-dollar herbal remedies distributorships at issue in *Kavky*, and thus that plaintiffs are not "consumers" purchasing "merchandise" under the NJCFA. Indeed, if anything, the hotel businesses that plaintiffs operate are even more "substantial and complex," *Kavky*, 820 A.2d at 679, than the restaurant franchises considered in *J&R Ice Cream*. By the allegations of the complaint, these franchises are of substantial value, involve management of property, and are governed by a comprehensive franchise agreement. By the allegations in the complaint, Wyndham does not make its franchises generally available to anyone in the public who wishes to operate a hotel, but instead requires prospective franchisees to submit an application that is subject to Wyndham's review of the "experience, skill and

financial resources" of the applicant. *See, e.g.*, 2d Am. Compl., Ex. A § 6 (referring to application); § 9.1 (stating that Wyndham "is relying on [the plaintiff franchisee's] experience, skill and financial resources"). Because acquiring and operating a hotel franchise is a significant business transaction, Wyndham requires up-front investments from its franchisees. *See, e.g.*, *id.*, Ex. A. § 6 (referring to a "non-refundable Initial Fee"). Wyndham further requires its franchisees to undertake a number of commitments, including to "select and acquire" the franchise location, *id.*, Ex. A § 3.1, "equip and supply" the franchise in "accordance with System Standards," *id.*, make improvements and renovations to the franchise facility, *id.*, Ex. A, Schedule B, maintain insurance, *id.*, Ex. A § 3.10, and attend training programs, *id.*, Ex. A § 3.5. These terms and others are set forth in a comprehensive contract that outlines the various terms of what is clearly a fulsome business relationship. *See id.*, Exs. A-N.

In short, it would bend the NJCFA beyond all recognition to suggest that hotel franchisees are "consumers" and their hotels are "merchandise" under the Act. The franchises at issue in this case are precisely the kind that courts have consistently recognized as falling outside that statute, and so Count IV must be dismissed.

### B. The Economic Loss Doctrine Bars Plaintiffs' Claims Under The NJCFA

Count IV should also be dismissed on the independent ground that where, as here, plaintiffs' claims arise from the performance of a contract, New Jersey's economic loss doctrine bars them from seeking relief under the NJCFA and directs that they pursue contractual remedies. The allegations underlying plaintiffs' NJCFA claim are the same ones forming the basis for their breach of contract claims. *Compare* 2d Am. Compl. ¶¶ 189-195 (NJCFA) *with id.*

¶¶ 138-174 (breach of contract). In attempting to convert a breach-of-contract claim into an NJCFA claim, plaintiffs seek to accomplish precisely what the economic loss doctrine disallows.

Under New Jersey law, the economic loss doctrine prevents a party from suing in tort based on allegations arising from an alleged breach of contract. *See, e.g.*, *Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co.*, 226 F. Supp. 2d 557, 562 (D.N.J. 2002) ("The economic loss doctrine prohibits plaintiffs from recovering in tort economic losses to which their entitlement only flows from a contract.") (quotations omitted); *State Capital Title & Abstract Co. v. Pappas Business Servs., LLC*, 646 F. Supp. 2d 668, 678 (D.N.J. 2009) ("If a plaintiff's harm is a result of a contractual breach, the economic loss doctrine bars those tort claims."). The basic rationale is the distinction between tort and contract: "The economic loss doctrine is designed to place a check on limitless liability ... and establish clear boundaries between tort and contract law." *Bracco Diagnostics*, 226 F. Supp. 2d at 565; *see also Horizon Group of New England, Inc. v. New Jersey Schls. Const. Corp.*, 2011 WL 3687451, at *5 (N.J. Super. Ct. App. Div. Aug. 24, 2011) ("Tort liability does not arise for claims based on failing to do what a person has agreed to do.").

Courts applying New Jersey law thus have rejected NJCFA claims where the allegations reflected the mere failure to abide by alleged contractual obligations. In *Farash & Robbins, Inc. v. Fleet Nat. Bank*, 2005 WL 3465659 (D.N.J. Dec. 19, 2005), for example, the plaintiff alleged breach of a loan agreement, but also attempted to bring a claim under the NJCFA for conduct "substantially similar" to its breach-of-contract claim. *Id.* at *5. The Court dismissed the NJCFA claim pursuant to the economic loss doctrine because "the claims that Plaintiff seeks damages for under the CFA are incidental to the loan agreement" and concern "part of the terms

of the contract, whether or not it is proven that [defendant] adhered to them." *Id.* at *6. Accordingly, the Court concluded, "Plaintiff's claim for damages under the CFA is appropriately dismissed under the economic loss doctrine." *Id.*; *see also Traverso v. Home Depot, U.S.A., Inc.*, 2007 WL 3124698, at *3 (D.N.J. Oct. 23, 2007) (dismissing NJCFA claim under the economic loss doctrine).

Here, plaintiffs seek damages in Count IV on the same grounds as their breach-of-contract claims. *Compare* 2d Am. Compl. ¶¶ 144, 145, 158, 159 (seeking breach-of-contract damages for "improperly inflating and overcharging Plaintiffs in breach of the express terms of the agreements") *with id.* ¶ 192 (seeking damages under the NJCFA for "impermissible and excessive fees which are not authorized to be charged in any of the provisions of the franchise agreements"). Where, as here, "[p]laintiff's allegations concerning [d]efendants' alleged fraudulent acts arise from [d]efendants' performance—or non-performance—of the" parties' agreement, the economic loss doctrine bars their claim. *Chen v. HD Dimension Corp.*, 2010 WL 4721514, at *9 (D.N.J. Nov. 15, 2010); *see also Shinn v. Champion Mortg. Co., Inc.*, 2010 WL 500410, at *4 (D.N.J. Feb. 5, 2010) (dismissing claim under the economic loss doctrine where "[t]here is no other relationship between the parties" other than a contractual one, and where "[p]laintiffs' claims are based on allegedly improper payments arising out of the[] contracts, which cannot give rise to a tort remedy").

Finally, while courts have allowed fraud in the inducement claims to proceed notwithstanding the economic loss doctrine, *see, e.g.*, *Traverso*, 2007 WL 3124698, at *2 (citing cases), such an argument is unavailable to plaintiffs here. The thrust of plaintiffs' claim is that the Rewards fee, proactive matching, and automatic enrollment violate their franchise

agreements, not that they were misled into entering those agreements on the basis of any alleged misrepresentations. *See Dutton Road Assocs. LP v. Sunray Solar, Inc.*, 2011 WL 1375681, at *4 (D.N.J. April 12, 2011) ("[O]nly those pre-contractual misrepresentations that are extraneous to the parties' contract may be brought alongside a breach of contract claim."). Though plaintiffs generically assert that they were "induced to become franchisees," 2d Am. Compl. ¶¶ 178, 190, such barebones allegations are clearly insufficient to meet the heightened pleading standards of Federal Rule of Civil Procedure 9(b), as plaintiffs provide no specific allegations about the who, what, and when of any alleged pre-contractual misrepresentations. *See Campmor, Inc. v. Brulant, LLC*, 2010 WL 1381000, at *8 (D.N.J. Apr. 1, 2010) ("The heightened pleading requirements of Rule 9(b) are applicable to claims of fraud under the New Jersey Consumer Fraud Act."). Accordingly, the economic loss doctrine requires dismissal of plaintiffs' claim under the NJCFA.

## II. ORLANDO LODGING ASSOCIATES' COUNT III FDUTPA CLAIM SHOULD BE DISMISSED BECAUSE THIS COURT ALREADY DISMISSED ITS FDUTPA CLAIM WITH PREJUDICE

Plaintiff Orlando Lodging Associates' claim under the FDUTPA (Count III) should be dismissed because this Court previously dismissed its FDUTPA claim *with prejudice* in its initial order on Wyndham's first motion to dismiss. *See* 8/22/11 Order at 6-7. Orlando Lodging is not a Florida resident, but rather "an Indiana limited liability company." 2d Am. Compl. ¶ 14. This Court thus dismissed its FDUTPA claim with prejudice because only Florida residents may bring claims under FDUTPA. *See* 8/22/11 Order at 6-7. As the Court explained, "[v]arious courts have recognized Constitutional or other limitations on the application of FDUTPA to non-Florida residents." *Id.* at 6 (citing, *inter alia*, *Coastal Physician Servs. of Broward Cnty., Inc. v.*

*Ortiz*, 764 So. 2d 7, 8 (Fla. 4th DCA 1999) (non-Florida residents cannot assert FDUTPA claims); *Océ Printing Sys. USA, Inc. v. Mailers DataServs., Inc.*, 760 So. 2d 1037, 1042 (Fla. 2d DCA 2000) (only residents can assert a claim under FDUTPA)).  As a result, the Court allowed only the FDUTPA claim of Amar Shakti Enterprises—the "[t]he sole Florida resident"—to proceed.  *Id.*

There is thus no basis for Orlando Lodging Associates, a non-Florida resident, to re-assert a claim that this Court has already rejected as a matter of law.  Plaintiffs' motion for leave to file a second amended complaint identified no errors in this Court's prior ruling, and indeed there are none.

## III.    COUNT II MUST BE DISMISSED BECAUSE THE CONDUCT ALLEGED IS NOT A BREACH OF CONTRACT AS A MATTER OF LAW

### A.    Subclass III's Breach-of-Contract Claim Must Be Dismissed Because These Plaintiffs Have Failed To Address The Deficiencies In This Court's Prior Order Dismissing This Claim

In Count II of their second amended complaint, plaintiffs reassert the breach-of-contract claim of Subclass III, whose agreements concededly "authorize[] the charging of a monthly fee for qualifying stays by loyalty reward members" but allegedly "make[] no mention of Pro-Active matching."  2d Am. Compl. ¶ 58(C).  As the Court found in dismissing this claim, neither the Rewards fee nor proactive matching constituted a breach of the Subclass III agreements.  *See* 8/22/11 Order at 9-10.  With respect to the fee itself, "[t]he franchise agreements … explicitly authorize the collection of the five percent Wyndham Rewards fee."  *Id.* at 9.  And with respect to proactive matching, "plaintiffs fail[ed] to point to any language that has been breached by" proactive matching, and "the Court's review ha[d] not uncovered any."  *Id.* at 10. As the Court explained, "the agreements do not include any language limiting the imposition of the five

percent fee" to particular situations.  *Id.*; *see also* 4/15/11 Wyndham Mot. to Dismiss [Dkt. #42], at 16 ("Proactive matching … affects only the *quantum* of fees owed for a particular *type of fee*—the Rewards fee—that is expressly allowed under the Subclass III agreements.  Plaintiffs point to nothing in the Subclass III agreements limiting Wyndham's ability to ensure that Rewards members receive their points, and thus how often a qualifying stay is identified and the Rewards fee assessed.") (emphasis in original; citation omitted).  In short, as the Court held, there was no basis for finding that proactive matching violated the Subclass III contracts.

Plaintiffs' second amended complaint does nothing to remedy the defects that the Court identified.  As was true with their original complaint, plaintiffs' second amended complaint "fail[s] to point to any language" that "limit[s] the imposition of the five percent fee" to particular situations, such as where a guest has affirmatively "'elected to stay at a Wyndham branded property because of his or her status as a Wyndham Rewards member.'"  8/22/11 Order at 10.  Indeed, plaintiffs' second amended complaint does not identify any prohibitive contractual language, because no such language exists.  The best plaintiffs offer is that "Pro-Active Matching … is not part of nor contemplated by the franchise agreement[s]," 2d Am. Compl. ¶ 126, which the Court already recognized in previously ruling against them, *see* 8/22/11 Order at 9 (noting that the Subclass III "franchise agreements are silent on the topic of proactive matching").  The basic point is that proactive matching results in fees that the franchisees agreed to pay, and plaintiffs have identified no contractual limitations on when this fee may be imposed.  *See* 4/15/11 Wyndham Mot. to Dismiss at 14 ("That proactive matching could, in plaintiffs' view, result in more documented Rewards stays, and thus more Rewards fees, does not change the fact that plaintiffs agreed to pay this type of fee in the first place.").

To the extent the Subclass III plaintiffs now contend that the "automatic enrollment" of guests in Wyndham Rewards also constitutes a breach of contract, *see* 2d Am. Compl. ¶¶ 158-159, this allegation fails under the logic of the Court's prior Order. By the terms of the second amended complaint, "automatic enrollment" merely adds consumers to the Wyndham Rewards program and enables them to earn points for their stays. *See, e.g.*, *id.* ¶ 86. Just as plaintiffs were unable to identify contractual language limiting the situations in which the Rewards fee may be assessed, plaintiffs cannot identify contractual language limiting the mechanisms by which members can be enrolled in the Wyndham Rewards program in the first place. Indeed, plaintiffs concede that their "agreements do not define how a guest becomes a 'member.'" *Id.* ¶ 124. Just as with proactive matching, therefore, though "automatic enrollment" may result in more Rewards fees, it does not change the fact that the fee itself is contractually permissible. *See* 8/22/11 Order at 9. As Wyndham explained previously, "[i]f Wyndham created a successful advertising campaign that led to more hotel stays, that too could increase the frequency with which franchisees pay a Rewards fee, but no one could doubt that such fees were allowable when the agreements expressly provided for them." 4/15/11 Wyndham Mot. to Dismiss at 16.

Faced with the fact that the contracts gave Wyndham the right to impose the Rewards fee for Rewards member stays, plaintiffs attempt to make an end-run around this Court's ruling by claiming that proactive matching and automatic enrollment contravene "the implied obligation of good faith and fair dealing." 2d Am. Compl. ¶¶ 166, 171. The franchise agreements of the Subclass III plaintiffs all provide that "[t]his Agreement will be governed by and construed under the laws of the State of New Jersey." *Id.*, Ex. B § 17.6.1; *see also id.*, Ex. H § 17.6.1

(same); Ex. I § 17.6.1 (same); Ex. J § 17.6.1 (same).  Under New Jersey law, plaintiffs' implied covenant argument fails for two independent reasons, both of which require dismissal.

*First*, courts applying New Jersey law have made clear that "[t]he implied duty of good faith and fair dealing *does not* operate to alter the clear terms of an agreement and *may not* be invoked to preclude a party from exercising its express rights under such an agreement."  *Amur Realty, LLC v. Banco Do Brasil, S.A.*, 2011 WL 1327422, at *3 (D.N.J. Apr. 5, 2011) (emphasis added) (quotations omitted); *see also Wade v. Kessler Inst.*, 798 A.2d 1251, 1259 (N.J. 2002) ("[T]he implied covenant of good faith and fair dealing cannot override an express term in a contract.") (quotations omitted); *Luso Fuel Inc. v. BP Prods. N. Am., Inc.*, 2009 WL 1873583, at *5 (D.N.J. June 29, 2009) ("Plaintiff cannot now assert the implied duty of good faith as a means of precluding Defendant from exercising its express rights under the [franchise] Agreements.").

Here, the Court has already determined that the Subclass III agreements "explicitly authorize the collection of the five percent Wyndham Rewards fee" and "do not include any language limiting the imposition of the five percent fee" to particular situations.  8/22/11 Order at 9-10.  Plaintiffs thus cannot invoke the duty of good faith and fair dealing to somehow impose these limitations by implication and thereby prevent Wyndham from fully exercising its express right to assess the Rewards fee.  *See, e.g.*, *Luso Fuel*, 2009 WL 1873583, at *5.  That would be nothing less than re-writing the parties' agreement, contrary to the principle that courts applying New Jersey law "cannot read the implied covenant of good faith and fair dealing to essentially alter the express terms of the contract," *Amur Realty*, 2011 WL 1327422, at *4.  In fact, the District Court for the District of New Jersey has specifically granted a motion to dismiss a franchisee's implied covenant claim on the ground that the "[t]he express terms of the franchise

agreements govern whether and when [the franchisees] are obligated to pay fees," making clear that "[w]hether [the franchisor] acted inappropriately in assessing fees can be determined *only by reference to the contractual terms*." *Coldwell Banker Real Estate, LLC v. Plummer & Assocs.*, 2009 WL 3230840, at *3 (D.N.J. Oct. 2, 2009) (emphasis added). That reasoning applies with equal force here, especially where the Court has dismissed Count II once already.

*Second*, under New Jersey law "[p]roof of bad motive or intention is vital to an action for breach of the covenant" of good faith and fair dealing, because "[i]f courts construe the covenant too broadly, it could … impos[e] unintended obligations upon parties and destroy[] the mutual benefits created by legally binding agreements." *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs.*, 864 A.2d 387, 396, 399 (N.J. 2005) (quotations omitted); *see also Coldwell Banker Real Estate*, 2009 WL 3230840, at *4 (explaining that under New Jersey law "[b]ad faith or ill motive is an essential element of a claim for breach of the implied covenant of good faith and fair dealing"). As a result, "a party does not breach the implied covenant of good faith and fair dealing merely because its decisions disadvantaged another party." *Gaelick v. Connecticut Gen. Life Ins. Co.*, 2011 WL 3794228, at *6 (D.N.J. Aug. 25, 2011) (quotations omitted).

The Subclass III plaintiffs here do not and cannot allege that Wyndham acted in "bad faith" or with "ill motive" in enabling hotel consumers to earn additional points and not deducting from franchisee invoices those Rewards fees resulting from proactive matching and "automatic enrollment," especially when this accounting was not required under the parties' agreement. Under the reasoning of this Court's prior opinion Wyndham's ability to impose the

Rewards fee was not limited in this regard, but at best, this case involves a disagreement over the scope of the parties' obligations, not "bad faith" or "ill motive."

In short, because plaintiffs' second amended complaint does not and cannot remedy the deficiencies that this Court previously identified, the Court should now dismiss Count II with prejudice as to Subclass III. *See, e.g.*, *Williams v. J.P. Morgan Chase Bank, N.A.*, 2009 WL 5128030, at *1 (M.D. Fla. Dec. 21, 2009) ("Because the amended complaint failed to address any defect enumerated in the previous order, [the Court] dismiss[ed] the amended complaint with prejudice.").

## B.     Subclass IV's Breach-Of-Contract Claim Fails Under The Logic Of This Court's Prior Order

Plaintiffs' second amended complaint also adds a breach-of-contract claim on behalf of Subclass IV, whose contracts expressly allow both the Rewards fee and proactive matching.[3] *See* 2d Am. Compl. ¶ 58(d) (alleging that the Subclass IV contracts "require payment of a loyalty program charge for each loyalty reward member who has stayed in the hotel and whose stay constitutes a 'qualifying stay' <u>and</u> wherein the franchisor stipulates it will Pro-actively match and award members points and charge franchisees on their qualifying stays even if the customers do not present their membership rewards card upon check-in").  Because these contracts allow Wyndham to impose both the Rewards fee and proactive matching, the Subclass IV breach-of-contract claim fails as a matter of law.

With respect to the fee itself and proactive matching, there clearly can be no breach of contract when plaintiffs concede that their agreements authorize these very practices. *See id.*

---

[3] The Subclass IV contracts are likewise governed by New Jersey law. *See* 2d Am. Compl., Ex. A § 17.6.1 ("This Agreement will be governed by and construed under the laws of the State of New Jersey."); *id.*, Ex. L § 17.6.1 (same); Ex. M §17.6.1 (same); Ex. N § 17.6.1 (same).

¶ 58(d). There is thus no basis whatsoever for the Subclass IV plaintiffs to label the Rewards Fee "extra-contractual" and to complain about alleged "forced participation in [the] Pro-Active Matching program," *id.* ¶ 170. Nor, under the logic of this Court's prior Order dismissing Count II, can the Subclass IV plaintiffs allege a breach of contract on the basis of "automatic enrollment." *Id.* ¶ 171. As previously explained above with respect to Subclass III, "plaintiffs fail to point to any language that has been breached by" automatic enrollment, 8/22/11 Order at 10, which is merely a mechanism by which consumers become Rewards members and contractually-authorized Rewards fees are assessed. Nor, for the reasons explained above, can these plaintiffs seek to make an end-run around the plain language of the contract by adverting to the implied duty of good faith and fair dealing, especially where their contracts expressly allow not only the Rewards Fee but also proactive matching. *See ante*, at 15-17 (citing, *e.g.*, *Amur Realty, LLC v. Banco Do Brasil, S.A.*, 2011 WL 1327422 (D.N.J. Apr. 5, 2011); *Coldwell Banker Real Estate, LLC v. Plummer & Assocs.*, 2009 WL 3230840, at *3 (D.N.J. Oct. 2, 2009)).

## IV. COUNT I SHOULD BE DISMISSED TO THE EXTENT PLAINTIFFS ALLEGE A BREACH OF THE IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING

This Court previously allowed Subclasses I and II to proceed with breach-of-contract claims under Count I. *See* 8/22/11 Order at 8-9. But plaintiffs' second amended complaint purports to add to this Count by alleging that Wyndham violated the implied duty of good faith and fair dealing. *See* 2d Am. Compl. ¶ 147. To that extent, this claim must be dismissed because, as was true above, these plaintiffs do not allege "bad faith" or "ill motive," as required under New Jersey law. *See, e.g.*, *Coldwell Banker Real Estate*, 2009 WL 3230840, at *4; *Brunswick Hills Racquet Club, Inc.*, 864 A.2d at 396, 399. Moreover, an implied duty claim is unnecessary where, as here, the Court has permitted the Count I breach-of-contract claim to

move forward. No purpose is served by allowing this claim to remain in the case, as at most it would lead to duplicative recovery, which is not permitted. *See, e.g.*, *Hailey v. City of Camden*, 650 F. Supp. 2d 349, 357 (D.N.J. 2009).

## CONCLUSION

Defendants respectfully request that this Court: (1) dismiss the Count IV NJCFA claim in its entirety; (2) dismiss the Count III FDUTPA claim as to Orlando Lodging Associates; (3) dismiss the Count II breach-of-contract claim in its entirety; (4) dismiss the Count I claim to the extent plaintiffs allege the violation of the implied duty of good faith and fair dealing.

Date:   October 31, 2011

Eugene F. Assaf, P.C. (*pro hac vice*)
Christopher C. Posteraro (*pro hac vice*)
Daniel A. Bress (*pro hac vice*)
KIRKLAND & ELLIS LLP
655 15th St., N.W.
Washington, D.C. 20005
Phone: (202) 879-5000
Facsimile: (202) 879-5200

Counsel for Defendants

Respectfully submitted,

s/ Dennis P. Waggoner
Benjamin H. Hill, III (FBN 094585)
bhill@hwhlaw.com
Dennis P. Waggoner (FBN 509426)
dwaggoner@hwhlaw.com
Casey Reeder (FBN 041986)
creeder@hwhlaw.com
HILL, WARD & HENDERSON P.A.
101 East Kennedy Blvd., Suite 3700
P.O. Box 2231
Tampa, FL 33602
Phone: (813) 221-3900
Facsimile: (813) 221-2900

Counsel for Defendants

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 31, 2011, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record in this action.

s/ Dennis P. Waggoner